1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE GOLD, as Trustee of the Michelle Gold Separate Property Trust dated December 23, 2002, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL DEFAULT SERVICING CORPORATION; U.S. BANK, NA, successor trustee to Bank of America, NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates WMALT, Series 2007-OA2; SELECT PORTFOLIO SERVICING; and DOES 1–25, <br><br> Defendants. | Case No.:  22-CV-1232 JLS (AGS) <br><br> **ORDER (1) GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; (2) GRANTING DEFENDANTS' MOTION TO DISMISS; AND (3) DENYING PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER** <br><br> (ECF Nos. 2, 2-2, 4 & 11-2) |

Presently before the Court are Defendants National Default Servicing Corporation ("NDSC"); U.S. Bank, NA, successor trustee to Bank of America, NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates WMALT, Series 2007-OA2 ("USB"); and Select Portfolio Servicing's ("SPS," and collectively, "Defendants") Motion to Dismiss ("Mot.," ECF No. 2) and Request for Judicial Notice in support of the same (ECF No. 2-2).  Plaintiff Michelle Gold, as Trustee of the Michelle Gold Separate Property Trust dated December 23, 2002 ("Plaintiff"), filed a Response in Opposition to

1

("MTD Opp'n," ECF No. 14), and Defendants filed a Reply in Support of ("MTD Reply," ECF No. 15), Defendants' Motion.  Also before the court is Plaintiff's *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction ("TRO Appl.," ECF No. 4).  Defendants filed a Response in Opposition to ("TRO Opp'n," ECF No. 11) Plaintiff's TRO Application, as well as a Request for Judicial Notice in support of the same (ECF No. 11-2).  Plaintiff filed a Reply in support of the TRO Application ("TRO Reply," ECF No. 13).  Having carefully considered the Parties' briefing, the facts and evidence, and the law, the Court **GRANTS** Defendants' Requests for Judicial Notice, **GRANTS** Defendants' Motion, and **DENIES** Plaintiff's TRO Application.

## BACKGROUND

This case concerns the real property located at 3342 Randy Lane, Chula Vista, California 91908 (the "Property").  Complaint ("Compl.," ECF No. 1-2) ¶ 20.  The Property is Plaintiff's personal residence.  *Id.* ¶ 4a.  Plaintiff claims that, through a series of fraudulent transfers, NDSC was named successor trustee under the deed of trust ("DOT") encumbering the Property.  *See id.* ¶¶ 4–8.  On May 4, 2022, two days before a planned non-judicial foreclosure sale of the Property by NDSC, Plaintiff filed suit against Defendants in the Superior Court of San Diego County.  *See generally id*.  The Complaint alleges Defendants "illegally transferr[ed] Plaintiff's property and legal rights to third parties via forged documents"; "illegal[ly] disclos[ed] Plaintiff's private and personal loan documents to third parties"; "failed to apply over $16,000 of payments"; and "refuse[d] to speak with Plaintiff regarding her requests for loan modification and/or loss mitigation." *Id.* ¶¶ 7–8.  Plaintiff asserts causes of action for cancellation of written instruments, fraudulent transfer, violation of the Real Estate Settlement Procedures Act ("RESPA"), and quiet title.  *Id.* ¶¶ 9–23.

Defendants removed the case to federal court on the basis of federal question jurisdiction on August 22, 2022.  *See generally* Notice of Removal ("Notice," ECF No. 1).  In their Notice, Defendants contend that removal is proper because Plaintiff's Complaint

"alleges claims under [RESPA], 12 U.S.C. § 2601, et seq.," thus giving rise to original jurisdiction under 28 U.S.C. § 1331, Notice ¶ 4, known as "federal question jurisdiction." Defendants NDSC and SPS then filed a Motion to Dismiss for failure to state a claim on August 29, 2022, arguing that Plaintiff's claims were "meritless" and that "Defendants and their agents were lawfully entitled to service and collect on [Plaintiff's] loan." *See generally* Mot.; Memorandum of Points and Authorities in Support of Motion to Dismiss ("MPA," ECF No. 2-1) at 5. Defendant USB later joined the Motion to Dismiss. *See* ECF No. 10.

Meanwhile, Plaintiff filed the TRO Application on September 9, 2022. *See generally* TRO Appl. Plaintiff notes that the Property was sold on August 26, 2022, but she argues that the temporary restraining order is necessary to prevent Defendants "from proceeding any further in the sale and transfer of title, interests and obligations relating to [the Property]." *Id.* at 2.

On September 13, 2022, in an effort to determine whether the Court could properly hear this case, the Court ordered Defendants NDSC and SPS to show cause as to subject-matter jurisdiction. *See generally* ECF No. 6 (the "Order" or "OSC"). The Court was not satisfied that the manner in which Plaintiff pleaded her purported RESPA claim was sufficient to establish federal-question jurisdiction. OSC at 1–2. Specifically, Plaintiff merely recited the reasons Congress enacted RESPA, and then claimed that Defendants' failure to communicate with her regarding the "status of her loan and requests for loss mitigation assistance" constituted a violation of RESPA. *See* Compl. ¶¶ 16–18. Pursuant to the OSC, Defendants addressed this jurisdictional issue in their TRO Opposition.

**THE COURT'S ORDER TO SHOW CAUSE REGARDING JURISDICTION**

The Court first addresses the threshold issue of its subject-matter jurisdiction over this action. Having reviewed Defendants' response to the Court's Order and the law, the Court is now satisfied that it can properly exercise federal-question jurisdiction over the matter.

/ / /

"In determining federal question jurisdiction, the well-pleaded complaint rule 'provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Fisher v. NOS Commc'ns (In re NOS Commc'ns)*, 495 F.3d 1052, 1057 (9th Cir. 2007)). Specifically, "[f]ederal question jurisdiction extends only in those cases in which a well-pleaded complaint establishes 'either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law.'" *Easton v. Crossland Mortg. Corp.*, 114 F.3d 979, 982 (9th Cir. 1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983)). RESPA is a federal law that provides a private cause of action. *See* 12 U.S.C. § 2605(f)(1). Therefore, federal-question jurisdiction exists where a plaintiff's complaint asserts a cause of action under RESPA. *See Ali v. Downey Sav. & Loan*, No. CV 10-3798 GAF FMO, 2010 WL 2720505, at *1 (C.D. Cal. July 7, 2010) ("Plaintiff's third claim for relief alleges Defendants violated [RESPA], 12 U.S.C. § 2601 et seq. Federal law provides Plaintiff with this federal cause of action, and the Court therefore concludes that Plaintiff's complaint presents a federal question.").

Here, Plaintiff specifically pleaded an individual cause of action under RESPA. *See* Compl. ¶¶ 16–18. While Plaintiff did not specify which section(s) of RESPA Defendants allegedly violated and simply concluded that Defendants' "refus[al] to speak" with Plaintiff constituted a violation of RESPA, these issues go to the sufficiency of Plaintiff's claims, not whether the Court has federal-question jurisdiction over the claims. *See Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1089 n.1 (9th Cir. 2002) (noting that federal-question jurisdiction may exist despite the fact that a complaint's prayer for relief makes no mention of the statute upon which plaintiffs rely, as the "allegations in the complaint . . . are the proper focus of [the] inquiry under the well-pleaded complaint rule"); *Curtis v. Deutsche Bank Nat'l Tr. Co.*, No. CV 20-10609, 2020 WL 6544783, at *1 n.1 (E.D. Mich. Nov. 6, 2020) (finding plaintiffs did not meet the pleading standard for Federal Rule of Civil Procedure 12(b)(6) because they "fail[ed] to cite to a specific section of a

statute that Defendants allegedly violated"); *see also Byrd v. Guild Mortg. Co.*, No. 11CV2204-WQH-WVG, 2011 WL 6736049, at *2–3 (S.D. Cal. Dec. 20, 2011) (exercising federal-question jurisdiction despite concluding that plaintiffs "failed to allege sufficient facts to state a claim under RESPA"); *Guerrero v. First NLC Fin. Serv.*, No. CV111038AHMMANX, 2011 WL 13218012, at *9 (C.D. Cal. June 14, 2011) (same). Therefore, the Court finds that it may properly exercise federal-question jurisdiction over this matter and **DISCHARGES** the September 13, 2022 OSC.

## DEFENDANTS' REQUESTS FOR JUDICIAL NOTICE

Defendants request that the Court take judicial notice of the following exhibits: (1) the Deed of Trust recorded on August 3, 2006, in the Official Records of the County of San Diego as Instrument No. 2006-0551257; (2) the Assignment of Deed of Trust recorded on April 6, 2012, in the Official Records of the County of San Diego as Instrument No. 2012-0202325; (3) the Substitution of Trustee recorded on February 14, 2019, in the Official Records of the County of San Diego as Instrument No. 2019-0054311; (4) the Notice of Default and Election to Sell Under Deed of Trust recorded on February 14, 2019, in the Official Records of the County of San Diego as Instrument No. 2019-0054312; (5) the Order on Motion for Relief from Automatic Stay entered on March 8, 2022, by the United States Bankruptcy Court for the Southern District of California, Bankruptcy No. 21-03467-LA7; (6) the Notice of Trustee's Sale recorded on March 22, 2022, in the Official Records of the County of San Diego as Instrument No. 2022-0126988; and (7) the California Secretary of State's Business Search results for Bird Rock Home Mortgage, LLC. *See* ECF No. 2-2 at 2–3; ECF No. 11-2 at 2–3.

As a general rule, a district court cannot rely on evidence outside the pleadings in ruling on a Rule 12(b)(6) motion without converting the motion into a Rule 56 motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998)). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—

without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed. 1999)).  Federal Rule of Evidence 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

"[U]nder Fed R. Evid. 201, a court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  "[O]fficial records of the County of San Diego, and copies of U.S. Bankruptcy Court documents . . . are matters of public record." *Lopez v. Wells Fargo Bank, N.A.*, No. 16-CV-0811-AJB-DHB, 2017 WL 1336764, at *3 (S.D. Cal. Apr. 5, 2017).  Therefore, the Court finds that taking judicial notice of Exhibits (1) through (6) is appropriate, as they are all official records of the County of San Diego or copies of U.S. Bankruptcy Court documents.  Moreover, Exhibits (3) and (4) were attached to Plaintiff's Complaint in full, as were portions of Exhibit (1), *see* Compl. Exs. A & D; accordingly, the Court finds these materials were additionally incorporated by reference into the Complaint.  Finally, "the accuracy of the results of records searches from the Secretary of State for the State of California corporate search website can be determined by readily accessible resources whose accuracy cannot reasonably be questioned." *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011).  Therefore, the Court finds it appropriate to take judicial notice of Exhibit (7) as well.

In sum, the Court **GRANTS** Defendants' Requests for Judicial Notice in their entirety.

/ / /

/ / /

/ / /

/ / /

**DEFENDANTS' MOTION TO DISMISS**

## I.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

7

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.*   Finally, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

Where a complaint does not survive the Rule 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "The Ninth Circuit has instructed that the policy favoring amendments 'is to be applied with extreme liberality.'" *Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 155 (N.D. Cal. 2005) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

## II.   Analysis

Plaintiff asserts four causes of action against Defendants: cancellation of deeds, fraudulent transfers, violation of RESPA, and quiet title.  *See* Compl. ¶¶ 9–23.  Defendants argue, however, that Plaintiff's Complaint fails to state any claim upon which relief can be granted.  *See generally* MPA.  Accordingly, the Court addresses the sufficiency of each of Plaintiff's claims in turn.

### A.   *Cancellation of Deeds*

Plaintiff alleges the "conduct of Defendants, and each of them, in forging deeds, documents, and transferring real property without any legal authority, dispossessing Plaintiff of her Property was willful and was intended to injure Plaintiff and to deprive Plaintiff of the Property purportedly conveyed by forged Deeds of Trust and Substitution of Trustees." Compl. ¶ 11.  Specifically, Plaintiff alleges that there is no evidence of "legal transfer" to USB from JP Morgan Chase ("Chase"), Plaintiff's prior loan servicer.  *Id.* ¶ 4e. She concludes that USB had no authority to substitute NDSC as trustee under the DOT, and NDSC, therefore, had no right to foreclose on the Property.  *Id.*  For these reasons,

Plaintiff seeks cancellation of the allegedly fraudulent deeds. *Id*. ¶¶ 9–11.  Defendants argue that Plaintiff's Complaint is "devoid of any facts to establish the required elements of fraud" and that recorded real estate documents "make abundantly clear that Defendants and their agents were lawfully entitled to service and collect on the loan."  MPA at 4–5.

California Civil Code § 3412 allows for cancellation of a written instrument when "there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable."  Cal. Civ. Code § 3412.  Thus, "[t]o plead a cause of action for cancellation of instrument, plaintiff must show that [s]he will be injured or prejudiced if the instrument is not cancelled, and that such instrument is void or voidable."  *Zendejas v. GMAC Wholesale Mortg. Corp.*, No. 1:10-CV-00184, 2010 WL 2629899, at *7 (E.D. Cal. June 29, 2010).  "A plaintiff must provide facts, 'not mere conclusions, showing the apparent validity of the instrument designated, and point out the reason for asserting that it is actually invalid.'"  *D'Oleire v. Select Portfolio Servicing, Inc.*, No. 316CV02520GPCNLS, 2016 WL 7188289, at *9 (S.D. Cal. Dec. 12, 2016) (quoting *Ephraim v. Metro. Tr. Co. of Calif.*, 28 Cal. 2d 824, 833 (Cal. Ct. App. 1946)).[1]

Because Plaintiff's allegations involve fraud, Plaintiff must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  "Under Rule 9(b), a party alleging fraud or mistake is required to plead with particularity the circumstances constituting fraud or mistake."  *Ghalehtak v. Fay Servicing, LLC*, 304 F. Supp. 3d 877, 889 (N.D. Cal. 2018), *aff'd*, 765 F. App'x 168 (9th Cir. 2019).  "This requires pleading 'the who, what, when, where, and how' of the misconduct charged."  *Id.* (citing *Cooper v.*

---

[1] Although, generally speaking, "[a]lleging facts to show tender in the amount of the indebtedness or a valid excuse to the tender requirement is necessary to state a claim for cancellation of instruments," *D'Oleire v. Select Portfolio Servicing, Inc.*, No. 316CV02520GPCNLS, 2016 WL 7188289, at *10 (S.D. Cal. Dec. 12, 2016) (citing *Morgan v. Aurora Loan Servs., LLC*, 646 F. App'x 546 (9th Cir. 2016)), this so-called "tender rule" does not apply "where the plaintiff alleges the documents were executed as a result of fraud and without plaintiffs' knowledge that the instruments were void," *Cheung v. Wells Fargo Bank, N.A.*, 987 F. Supp. 2d 972, 978 (N.D. Cal. 2013) (citing *Fleming v. Kagan*, 189 Cal. App. 2d 791 (Ct. App. 1961)).  Here, Plaintiff's Complaint alleges that the instruments were "forged, fraudulent, and null and void."  Compl. ¶ 4e.  Therefore, Plaintiff was not required to allege tender to state a cancellation claim.

*Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).   Relatedly, under California Code of Civil Procedure § 338(d), cancellation claims involving fraud have a three-year statute of limitations that runs from the time of discovery of the facts constituting fraud. *Westfall v. Mortg. Elec. Registration Sys., Inc.*, No. 3:15-CV-01403-L-NLS, 2016 WL 1241520, at *4 (S.D. Cal. Mar. 30, 2016) (citing *Robertson v. Superior Ct.*, 90 Cal. App. 4th 1319, 1326 (2001); *Zakaessian v. Zakaessian*, 70 Cal. App. 2d 721, 725 (1945)).

Here, the Court finds that Plaintiff has not supported her allegations of fraud with sufficient facts.   Plaintiff only broadly alleges in conclusory fashion that "[a]ny documents defendants rely on are forged, fraudulent, and null and void."   Compl. ¶ 4e.   "Such allegations fail to identify the allegedly fraudulent conduct with specificity and therefore do not meet the pleading requirements under Rule 9(b)." *Ghalehtak*, 304 F. Supp. 3d at 889.   Plaintiff also has failed to plead any facts pertaining to when she discovered the alleged fraud.

Moreover, Plaintiff has not adequately demonstrated that the instruments to be cancelled are void or voidable.   While Plaintiff claims that USB had no authority to substitute NDSC as successor trustee, this allegation is belied by the judicially noticed exhibits. *See Sprewell*, 266 F.3d at 988 ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").   The documentary trail begins with Plaintiff's loan from VirtualBank, a division of Lydian Private Bank, in the amount of $599,200, on July 21, 2006. *See* ECF No. 11-2 at 6.   To secure the promissory note evidencing the loan, Plaintiff executed and delivered to VirtualBank a DOT encumbering the Property. *See id.* at 5–7.   Under the DOT, First American Lenders Advantage was named trustee. *Id.* at 6.   Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as nominee for VirtualBank, was named beneficiary. *Id.* at 6.   The legal implication of the latter designation was that "MERS may exercise the rights and obligations of a beneficiary of the deed of trust, a role ordinarily afforded the lender, but it [would] exercise those rights and obligations only as an agent for the lender, not for its own interests." *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 273 (2011)

(analyzing identical contract language), *disapproved of on other grounds by Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016).  The DOT itself states that MERS may "exercise any or all of [the interests granted in the DOT], including, but not limited to, the right to foreclose and sell the Property."  ECF No. 11-2 at 16.

Paragraph 20 of the DOT provides that "[t]he Note or a partial interest in the Note (together with [the DOT]) can be sold one or more times without prior notice to Borrower."  *Id.* at 15.  On March 20, 2012, MERS, as nominee for VirtualBank, assigned all its interest in the DOT to USB "for good and valuable consideration," making USB the new beneficiary under the DOT.  *Id.* at 58 (emphasis omitted).  While not disputed by Plaintiff, it is worth noting that "California [courts] have universally held that MERS, as nominee beneficiary, has the power to assign its interest under a deed of trust."  *Morgan v. Aurora Loan Servs., LLC*, 646 F. App'x 546, 551 (9th Cir. 2016) (citing *Herrera v. Fed. Nat'l Mortg. Ass'n*, 205 Cal. App. 4th 1495, 1498 (2012)).

Paragraph 24 of the DOT provides that the lender-beneficiary "may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by [the beneficiary]."  *See id.* at 17.  On February 5, 2019, USB, through its attorney-in-fact SPS, substituted NDSC as the successor trustee under the DOT, thereby replacing First American Lenders Advantage, the original trustee.  ECF No. 11-2 at 60.  In her Opposition, Plaintiff argues, for the first time and in conclusory fashion, that "SPS, as the mere servicer of the loan for Chase, had no authorization or legal right to substitute [USB] or [NDSC] as a Trustee."  MTD Opp'n at 4.  Here, however, SPS was acting as the attorney-in-fact for USB, not as a loan servicer for Chase.  ECF No. 11-2 at 60; *see infra* at 11–12.  Moreover, contrary to Plaintiff's argument, "Section 1095 of the California Civil Code allows for execution by an attorney in fact, requiring only that '[w]hen an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact.'"  *Bergman v. Bank of Am.*, No. C-13-00741 JCS, 2013 WL 5863057, at *15 (N.D. Cal. Oct. 23, 2013).  The Substitution of Trustee demonstrates that such requirements were met here.

*See* ECF No. 11-2 at 60.  California courts have held that substitutions of trustee executed by an agent on behalf of the beneficiary do not render the substitution invalid, provided there is no contractual language prohibiting such an arrangement.  *See Kalnoki v. First Am. Tr. Servicing Sols., LLC*, 8 Cal. App. 5th 23, 40 (2017) (analyzing contract with identical language and finding that agent's execution of substitution of trustee did not render the substitution invalid); *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 232, *as modified* (Feb. 9, 2011) ("Neither Civil Code section 2934a, which governs the substitution of trustees, nor the trust deed itself precludes an attorney-in-fact from signing a Substitution of Trustee."); *Natividad v. Wells Fargo Bank*, N.A., No. 3:12-CV-03646 JSC, 2013 WL 2299601, at *14 (N.D. Cal. May 24, 2013); *Bergman*, 2013 WL 5863057, at *15 (N.D. Cal. Oct. 23, 2013).  Plaintiff cites to no authority, nor does she point to any language in the DOT, that would prohibit SPS, as attorney-in-fact for USB, from substituting NDSC as the successor trustee.

As the foregoing discussion demonstrates, Defendants transferred their interests in the DOT in accordance with California law and the prescriptions of the DOT.  Plaintiff, however, claims that USB "had nothing to transfer to NDSC [n]or any right to foreclose or authorize NDSC to foreclose on Plaintiff's property" because there is no evidence of transfer from Chase to USB.  Compl. ¶ 4e.  This argument requires an understanding of the loan servicer's role under the DOT.  Paragraph 20 of the DOT defines "Loan Servicer" as the entity "that collects Periodic Payments due under the Note and [the DOT] and performs other mortgage loan servicing obligations under the Note, [the DOT], and Applicable Law."  ECF No. 11-2 at 15.  All other relevant rights, interests, and obligations under the DOT are consigned to the lender-beneficiary, borrower, or trustee.  *See id.* at 5–19; *supra* pp. 9–11.  Here, Chase serviced Plaintiff's loan until June 1, 2016, at which time loan servicing was transferred to SPS.  *See* Compl. Ex. C.  Prior to the transfer of servicing responsibilities, Chase provided Plaintiff with a loan modification on March 21, 2011.  *Id.* Ex. B.  Plaintiff does not allege that the loan modification, nor any other action taken by Chase as the loan servicer, superseded or otherwise negated MERS's designation as the

nominee beneficiary or its ability to assign its interest to USB. *See supra* pp. 9–10.  In the absence of such an allegation, the lack of legal transfer between Chase and USB provides no support for Plaintiff's claim.

Even if Plaintiff's Complaint contained facts showing the relevant instruments were void or voidable, however, Plaintiff additionally has failed to allege serious injury. Plaintiff argues that "dispossessing Plaintiff of her Property was willful and was intended to injure Plaintiff and to deprive Plaintiff of the Property purportedly conveyed by forged Deeds of Trust and Substitution of Trustees."  Compl. ¶ 11.  Courts have declined to find serious injury, however, where the allegedly defective assignment does not alter the borrower's payment obligations under the Note and where the borrower does not deny that she has defaulted.  *See, e.g.*, *Saterbak v. JPMorgan Chase Bank, N.A.*, 245 Cal. App. 4th 808, 819 (2016); *Johnson v. PNC Mortg.*, 80 F. Supp. 3d 980, 989 (N.D. Cal. 2015).  Under such circumstances, the injury stems from the borrower's default, not the allegedly defective assignment.  *Saterbak*, 245 Cal. App. 4th at 819.  Here, Plaintiff has not alleged that the purportedly defective assignment altered her payment obligations under the Note, nor has Plaintiff denied that she defaulted. *See generally* Compl.  Although Plaintiff claims that Defendants have failed to apply over $16,000 of payments to her account, *id.* ¶ 8, Plaintiff provides no information on when such payments were made or whether they were sufficient to cure the default.  Therefore, the Court finds that Plaintiff has failed to allege serious injury as required by California Civil Code § 3412.

In sum, the Court finds that Plaintiff has not met the pleading requirements of Federal Rule of Civil Procedure 9(b); that the judicially noticed exhibits refute Plaintiff's claims that the instruments to be cancelled are void; and that Plaintiff has not demonstrated that she will suffer serious injury within the meaning of California Civil Code § 3412. Therefore, the Court **GRANTS** Defendants' Motion as to this claim.  In accordance with the Ninth Circuit's policy of extreme liberality in granting leave to amend and given that amendment likely would not be futile, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's cancellation of written instruments claim.

### B.    Fraudulent Transfer

Plaintiff's fraudulent transfer claim rests upon the same theory as Plaintiff's cancellation of written instruments claim; namely, Plaintiff argues that, because there is no record of transfer between Chase and USB,

> Defendants have no legal standing, title or right as the service provider of Plaintiff's mortgage loan, thus no legal rights to foreclose, transfer any interest between each other in an attempt to collect a debt Plaintiff does not owe [D]efendants, or to transfer any interest in Plaintiff's property or loan to third parties as successor in interests as Defendants did.

Compl. ¶ 13.  Defendants contend that Plaintiff's claim for fraudulent transfer fails for the same reasons that Plaintiff's claim for cancellation of written instruments failed: (i) "Plaintiff has failed to allege the necessary facts and elements of a claim for fraud," and (ii) the judicially noticed exhibits "establish that the DOT and [Substitution of Trustee] are valid."  MPA at 5.

"Fraudulent transfer claims are also subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b)."  *Retamco Operating, Inc. v. Carone*, No. CV 04-2997 CBM (RZX), 2004 WL 7338704, at *5 (C.D. Cal. Dec. 21, 2004).  As such, Plaintiff "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  As noted *supra*, however, Plaintiff's Complaint contains only conclusory allegations that the instruments in question were forged and fraudulent, and the judicially noticed exhibits refute Plaintiff's assertions that Defendants lacked authority to "transfer any interest between each other."  *See supra* pp. 9–12; Compl. ¶ 13.  As explained fully above, MERS assigned the DOT to USB, *supra* p. 10, and USB, through its attorney-in-fact SPS, substituted NDSC as successor trustee to First American Lenders Advantage, *id.* pp. 10–11.

Plaintiff's contention that "Defendants have no legal standing, title or right *as the service provider* of Plaintiff's mortgage loan, [and] thus no legal rights to foreclose [on the Property]," Compl. ¶ 13 (emphasis added), evidences a misunderstanding of the respective

roles of the loan servicer, beneficiary, and trustee under the DOT.  To reiterate, Paragraph 22 of the DOT provides that, in the event of default, the lender-beneficiary may invoke the power of sale, and further provides:

> If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located.

ECF No. 11-2 at 17; *see also* Cal. Civ. Code § 2924(a)(1) ("The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record . . . a notice of default" before exercising power of sale).  In accordance with this provision and as a result of Plaintiff's failure to make installment payments on the loan, NDSC recorded, on February 14, 2019, a "Notice of Default and Election to Sell Under Deed of Trust" in San Diego County ("NOD").  ECF No. 11-2 at 62–64.  The NOD informed Plaintiff that "the present beneficiary," USB, had elected to sell the Property to satisfy Plaintiff's obligations. *Id.* at 64.  Under Paragraph 22 of the DOT, if the power of sale is invoked, the trustee is obligated to "give public notice of sale to the persons and in the manner prescribed by Applicable Law." *Id.* at 17.  On March 22, 2022, NDSC recorded a "Notice of Trustee's Sale," notifying Plaintiff of the non-judicial foreclosure sale of the Property on May 6, 2022. *Id.* at 73.  As these provisions demonstrate, the loan servicer never had the power to foreclose on the Property, and the judicially noticed exhibits show that the loan servicer, SPS, did not do so here.

In sum, the Court finds that Plaintiff has failed to meet the heightened pleading requirements under Federal Rule of Civil Procedure 9(b) and that Plaintiff's theory underlying the fraudulent transfer claim, as presently pleaded, is meritless.  Accordingly, the Court **GRANTS** Defendants' Motion as to this claim.  The Court further **DISMISSES WITHOUT PREJUDICE** Plaintiff's fraudulent transfer claim, as Plaintiff may be able to amend the claim to cure the deficiencies described above.

/ / /

### C.     RESPA Violation

Plaintiff next asserts a violation of RESPA.  Compl. ¶¶ 16–18.  Without specifying which section of RESPA Defendants allegedly violated, Plaintiff argues that certain letters from SPS "evidence [D]efendants refused to speak with Plaintiff or provide her any information requested re status of her loan and requests for loss mitigation assistance."  *Id.* ¶ 18.  Defendants argue that Plaintiff's RESPA claim is deficient because she "fails to identify any conduct by Defendants that might be considered a violation of RESPA beyond a short conclusory statement that SPS failed to provide requested information."  MPA at 6.

RESPA seeks to ensure real estate consumers "are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."  12 U.S.C. § 2601(a)(1).  "To achieve this objective, RESPA contains three primary causes of actions which are respectively codified at 12 U.S.C. §§ 2605, 2607, and 2608."  *Morris v. Chase Home Fin.*, LLC, No. EP-13-CV-132-KC, 2013 WL 12130453, at *5 (W.D. Tex. Aug. 6, 2013) (citing 12 U.S.C. §§ 2601–17).  "Section 2605 codifies a loan servicer's duties; § 2607 prohibits kickbacks related to a real estate settlement service; and § 2608 bars conditioning a real estate sale on the use of a particular title insurance company."  *Id.*  In this case, neither § 2607 nor § 2608 appears applicable, as Plaintiff's Complaint is devoid of allegations concerning kickbacks or a conditional sale.  Thus, to the extent Plaintiff's RESPA claim does rest on those sections, the Court finds that Plaintiff has failed to plead sufficient facts to state a claim.

Section 2605 of RESPA "requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries, or 'qualified written requests,' from borrowers regarding the servicing of their loans."  *Hueso v. Select Portfolio Servicing, Inc.*, 527 F. Supp. 3d 1210, 1221 (S.D. Cal. 2021) (citing 12 U.S.C. §§ 2605(e)(1)(A), (e)(2)).  A qualified written request ("QWR") is defined as

> [a] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer,

> that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  In *Medrano v. Flagstar Bank, FSB*, the Ninth Circuit clarified that, under § 2605(e), "a borrower's written inquiry requires a response as long as it (1) reasonably identifies the borrower's name and account, (2) either states the borrower's 'reasons for the belief . . . that the account is in error' or 'provides sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seeks 'information relating to the servicing of [the] loan.'"  704 F.3d 661, 666 (9th Cir. 2012).  Regarding the third prong, RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

The loan servicer must acknowledge receipt of the correspondence within five days, *see id.* § 2605(e)(1)(A), and must take appropriate action within thirty days, *see id.* § 2605(e)(2).  "If the servicer fails to respond properly to such a request, the statute entitles the borrower to recover actual damages and, if there is a 'pattern or practice of noncompliance,' statutory damages of up to $1,000."  *Hueso*, 527 F. Supp. 3d at 1221 (citing 12 U.S.C. § 2605(f)).  "Although this section does not explicitly set this out as a pleading standard, a number of courts have read the statute as requiring a showing of pecuniary damages in order to state a claim."  *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009); *see also Espinoza v. Recontrust Co.*, No. 09-CV-1687-IEG (RBB), 2010 WL 2775753, at *4–5 (S.D. Cal. July 13, 2010) (finding no RESPA claim where plaintiff failed to plead damages); *Hueso*, 527 F. Supp. 3d at 1224 (same).

/ / /

/ / /

Here, Plaintiff has failed to adequately plead her RESPA claim.  First, Plaintiff fails to explain how or why § 2605 should apply to Defendants USB and NDSC, who were not Plaintiff's loan servicers.

Second, Plaintiff's allegations fail to demonstrate that her inquiries qualify as QWRs.  Plaintiff alleges her requests for information related to the "status of her loan," "loss mitigation assistance," and "loan modification."  Compl. ¶¶ 8, 16–18.  "Loss mitigation assistance" and "loan modification," however, do not relate to loan servicing as defined by § 2605(i)(3).  *See Watson v. Bank of Am., N.A.*, No. 16CV513-GPC(MDD), 2016 WL 3552061, at *5 (S.D. Cal. June 30, 2016) ("[R]equests relating to loan modification are not related to 'servicing' of the loan."); *Van Egmond v. Wells Fargo Home Mortg.*, No. SACV 12-0112 DOC, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012) ("RESPA . . . only obligates loan servicers to respond to borrowers' requests for information relating to the servicing of their loans, which does not include loan modification information."); *Banks v. Wells Fargo Bank N.A.*, No. 3:17-CV-2381-B, 2018 WL 1427079, at *3 (N.D. Tex. Mar. 21, 2018) ("[A] request for a loss mitigation review and retention options does not relate to servicing of the loan."); *Smallwood v. Bank of Am., N.A.*, No. 1:15-CV-336, 2015 WL 7736876, at *6–7, 7 n.13 (S.D. Ohio Dec. 1, 2015) (finding loss mitigation and loan modification fall outside RESPA's definition of "servicing"); *Hudgins v. Seterus, Inc.*, 192 F. Supp. 3d 1343, 1350 (S.D. Fla. 2016) (same); *Christenson v. Citimortgage, Inc.*, No. 12-CV-02600-CMA-KLM, 2013 WL 5291947, at *4 (D. Colo. Sept. 18, 2013) (same); *see also* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10739 (February 14, 2013) (contrasting § 2605(k)(1)(c)'s reference to "standard servicer duties," which include loss mitigation assistance, with "servicing" as defined in § 2605(i)(3)).  Plaintiff also does not adequately explain what is meant by "status of her loan" and whether such requests relate to loan servicing.

/ / /

/ / /

Third, even if Plaintiff's inquiries were QWRs, Plaintiff's allegations are inadequate to state a claim because she does not specify to whom she sent her requests for information; when they were sent; whether they were written; or whether Plaintiff identified herself and her account.  Nor does Plaintiff provide adequate facts for the Court to determine whether the requests provided sufficient detail to SPS regarding the information Plaintiff sought.

Finally, Plaintiff has failed to adequately plead actual damages stemming from SPS's purported failure to respond to Plaintiff's inquiries.  Plaintiff's Complaint attempts to tie the then-pending non-judicial foreclosure sale of the Property to Defendants' refusal to speak with her, Compl. ¶ 8, but such damages relate to Plaintiff's default, not SPS's alleged failure to respond, *see Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) (finding plaintiff had not shown alleged RESPA violations caused pecuniary loss as plaintiff's "loss of property appears to have been caused by his default").  Likewise, Plaintiff provides no facts permitting the Court to plausibly infer that Defendants' alleged failure to "apply over $16,000 of payments" relates to SPS's failure to respond to a QWR sent by Plaintiff.  *See* Compl. ¶ 8.  Plaintiff's request for "$599,000 in exemplary or punitive damages" for Defendants' alleged RESPA violation fails as a matter of law, as § 2605 does not provide for punitive damages.  *See* Compl. ¶ 24-5.  Nor is Plaintiff's broad claim that Defendants refused to respond to her inquiries supported by sufficient facts for the Court to draw a reasonable inference that SPS has a "pattern or practice of noncompliance" with § 2605 such that Plaintiff would be entitled to statutory damages.

In sum, the Court finds that Plaintiff has failed to explain how § 2605 applies to Defendants USB and NDSC, whether any of Plaintiff's inquiries to SPS constitute QWRs, and how Defendants' alleged failure to respond to her inquires caused her to suffer actual damages.  Therefore, the Court **GRANTS** Defendants' Motion as to this claim.  Because Plaintiff conceivably could amend the complaint to cure these deficiencies, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's RESPA violation claim.

/ / /

### D.    Quiet Title

Plaintiff seeks to quiet title to the Property against any claims by all known and unknown Defendants.  Compl. ¶¶ 19–23.  Plaintiff asserts that the basis of her title in the Property "is a deed of Trust to the Michelle Gold Separate Property Trust dated December 23, 2002, and recorded in the Official Records of the County of San Diego, State of California, recorded on August 3, 2006, Document Number 2006-0551257."  *Id.* ¶ 21.  Defendants contend that "Plaintiff's claim for title is not superior to the interests held by Defendants" because (i) the "DOT and [Substitution of Trustee] are presumed valid as a matter of law" and (ii) "Plaintiff has failed to adequately allege any basis for voiding the DOT and [Substitution of Trustee]."  MPA at 6.

Quiet title claims are governed by California Code of Civil Procedure § 761.020.  That section requires that a complaint to quiet title be "verified" and include the following:

> (1) a description of the property, both legal description and street address; (2) the title of the plaintiff, and the basis for that title; (3) the adverse claims to the plaintiff's title; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the plaintiff's title against the adverse claims.

*Briosos v. Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1031 (N.D. Cal. 2010) (citing Cal. Civ. Proc. Code §§ 760.020(a)–(e)).  "California Civil Procedure Code § 446 requires a verification to be either sworn or signed under penalty of perjury."  *Lander v. Bank of Am. Corp.*, No. CV 11-8613-GHK (EX), 2012 WL 12951550, at *3 n.3 (C.D. Cal. Jan. 11, 2012) (citing Cal. Civ. Proc. Code § 446), *aff'd*, 643 F. App'x 663 (9th Cir. 2016).

Moreover, "[t]o bring a claim to quiet title, plaintiffs must show they 'are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust.'"  *Thompson v. Nationstar Mortg. LLC*, No. 17-CV-02864-DMR, 2017 WL 3232549, at *7 (N.D. Cal. July 31, 2017) (citing *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009)).  Thus, "to maintain a quiet title claim [in California], a plaintiff 'is required to allege tender of the proceeds of the loan at the pleading stage.'"  *Briosos*, 737 F. Supp. 2d at 1032 (quoting *Velasquez v. Chase Home*

*Finance, LLC*, No. C 10-01641 SI, 2010 WL 3211905, at *4 (N.D. Cal. Aug. 14, 2010));
*see also Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974) (stating that a plaintiff cannot
quiet title "without discharging his debt. The cloud upon his title persists until the debt is
paid."). "An offer of tender at some point in the future which is dependent on factors
outside of the quiet title claimant's control is not sufficient; claimant must instead allege
that he has the 'present ability to tender' the loan payments." *Butts v. IndyMac Bancorp*,
No. 10-00097 ODW (FFMX), 2010 WL 11597611, at *4 (C.D. Cal. Mar. 26, 2010) (citing
*Del Valle v. Mortg. Bank of Cal.*, No. CV-F-09-1316 OWW/DLB, 2009 WL 3786061, at
*9 (E.D. Cal. Nov. 10, 2009); *Curtis v. Option One Mortg. Corp.*, No. 109CV1608 AWI
SMS, 2010 WL 599816, at *5–6 (E.D. Cal. Feb. 18, 2010); *Valdez v. Am.'s Wholesale
Lender*, No. C 09-02778 JFRS, 2009 WL 5114305, at *8 (N.D. Cal. Dec. 18, 2009); *E. Or.
Land Co. v. Moody*, 198 F. 7, 18 (9th Cir. 1912) ("A tender of payment, to be the equivalent
of an actual production and tender of the money, must be made by one who has the present
ability to make the tender good, and the burden of proof is upon the plaintiff to show that
he has such ability.")).

     Here, Plaintiff's quiet title claim fails for at least two reasons. First, despite
captioning the Complaint as a "Verified Complaint," it was not sworn or signed under
penalty of perjury. Second, Plaintiff has not alleged that her obligations under the DOT
have been satisfied, nor has Plaintiff alleged the present ability to tender the debt secured
by the DOT. Moreover, as discussed above, the judicially noticed exhibits refute Plaintiff's
claim that the basis for her title is the DOT. *See supra* pp. 9–11. In fact, "[u]nder a deed
of trust, the trustee holds title and has the authority to sell the property in the event of a
default on the mortgage." *Brown v. Deutsche Bank Nat'l Tr. Co.*, 247 Cal. App. 4th 275
(2016) (citing *Haynes v. EMC Mortgage Corp.*, 205 Cal. App. 4th 329, 333–36) (2012)).
Finally, to the extent Plaintiff's quiet title claim rests upon allegations of fraud, the Court
finds such allegations fall short of the heightened pleading standard of Federal Rule of
Civil Procedure 9(b) for the reasons laid out above. *See supra* pp. 9, 12–13. Therefore,
the Court **GRANTS** Defendants' Motion as to this claim. As Plaintiff may be able to cure

the present deficiencies in her Complaint, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's quiet title claim.

### III. Conclusion

For the reasons set forth above, the Court **GRANTS** Defendants' Motion in its entirety and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims.

### PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER

### I. Legal Standard

Federal Rule of Civil Procedure 65(b) governs the issuance of a temporary restraining order ("TRO"). The standard for a TRO is identical to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either a TRO or a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Although a plaintiff seeking a TRO or preliminary injunction must make a showing on each element, the Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). Under this approach, a court may issue a TRO or preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . , so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotation marks omitted). Generally, a TRO is considered to be "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

/ / /

## II.    Analysis

Plaintiff requests the Court issue a TRO to prevent Defendants "from proceeding any further in the sale and transfer of title, interests and obligations relating to [the Property]."  TRO Appl. at 2.  Plaintiff notes that the Property was sold on August 26, 2022, but argues that, in the absence of a TRO, she will be left homeless and the Property "will be further depleted, destroyed, changed or sold and this court will never be able to return the property to Plaintiff in the same condition after a hearing on the issues are heard in this court."  *Id.* at 4.  In response, Defendants argue that Plaintiff has failed to present any facts that would satisfy the requirements for injunctive relief.  TRO Opp'n at 1.  Defendants also question the utility of a TRO, given the fact that the Property has already been sold to a third party, Bird Rock Home Mortgage, LLC ("Bird Rock").  *Id.*

The Court finds that Plaintiff has not made a sufficient showing to justify the issuance of a TRO.  Specifically, Plaintiff has failed to demonstrate a likelihood of success on the merits; Plaintiff's delay in seeking injunctive relief weighs against granting a TRO; the balance of hardships tips in Defendants' favor, due to Plaintiff's prolonged failure to make payments on the Property; and the public interest favors affording relief to those deserving security on a defaulted loan.  The Court addresses each of these factors more fully below.

### A.    *Likelihood of Success*

First and most importantly, Plaintiff has failed to demonstrate a likelihood of success on the merits in light of the Court's decision to grant Defendants' Motion to Dismiss in its entirety and dismiss without prejudice all of Plaintiff's claims.  *See supra* pp. 8–20; *see also Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) ("The first factor under *Winter* is the most important—likely success on the merits.").  Nor does Plaintiff present any "serious questions going to the merits" of her claims, as the judicially noticed exhibits demonstrate Defendants were entitled to foreclose on the Property and did so according to the prescriptions of the DOT and California law.  *See supra* pp. 8–20.

"Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter* elements]." *Garcia*, 786 F.3d at 740 (citing *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (internal quotation marks omitted). Thus, while Plaintiff's failure to demonstrate a likelihood of success or "serious questions going to the merits" is alone sufficient to deny Plaintiff's TRO Application, the Court will nevertheless briefly analyze the remaining elements.

### B.   Irreparable Harm

Plaintiff's delay in moving for injunctive relief weighs against granting her request. "Although the loss of one's home may constitute irreparable harm," *Jones v. H.S.B.C. (USA)*, 844 F. Supp. 2d 1099, 1101 (S.D. Cal. 2012), "[d]elay in seeking injunctive relief can imply a lack of urgency and irreparable harm, and weighs against the propriety of such relief," *Thomas v. Deutsche Bank Nat. Tr.*, No. C 12-00472 CRB, 2012 WL 821973, at *3 (N.D. Cal. Mar. 9, 2012) (citing *Miller ex rel. NLRB v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir.1993); *Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984)).

Here, non-judicial foreclosure proceedings were initiated on February 14, 2019, when NDSC recorded the NOD. *See* ECF No. 11-2 at 62. On August 29, 2021, Plaintiff filed a Chapter 7 Bankruptcy Petition in the U.S. Bankruptcy Court, Southern District of California. Declaration of Patrick Pittman ("Pittman Decl.," ECF No. 11-1) ¶ 13. The bankruptcy court granted USB relief from the automatic stay on March 8, 2022. ECF No. 11-2 at 67. On March 22, 2022, NDSC recorded the Notice of Trustee's Sale, informing Plaintiff that the non-judicial foreclosure sale of the Property would occur on May 6, 2022, and that the estimated unpaid balance on the Property amounted to $704,583.80. *Id.* at 73. The trustee's sale subsequently was postponed to August 26, 2022. Pittman Decl. ¶ 16. The property thereafter was sold to Bird Rock for $716.694.16. *Id.* ¶ 17.

Plaintiff filed her Complaint in the Superior Court of the County of San Diego on May 5, 2022—three years after non-judicial foreclosure proceedings were initiated, and more than a month after NDSC recorded the Notice of Trustee's Sale. *See generally*

Compl.  Defendants allege, and Plaintiff does not dispute, that after filing the Complaint, Plaintiff failed to serve Defendants or move for injunctive relief.  *See* Notice ¶ 2; TRO Opp'n at 8.  Following the removal of this action on August 22, 2022, Plaintiff finally requested injunctive relief from this Court on September 9, 2022, two weeks after the Property had already been sold to Bird Rock.  *See generally* TRO Appl.  Plaintiff has failed to explain this delay.  Accordingly, the Court finds that, while Plaintiff's loss of the Property constitutes real harm, Plaintiff's delay in seeking injunctive relief weighs against issuing a TRO.  *See Mammoth Specialty Lodging, LLC v. We-Ka-Jassa Inv. Fund, LLC*, No. CIVS10-0864 LKK/JFM, 2010 WL 1539811, at *2 (E.D. Cal. Apr. 16, 2010) (finding plaintiff's claim of irreparable harm was contradicted by plaintiff's failure to seek injunctive relief for several weeks after defendant recorded notice of trustee's sale).

### C.    Balance of Hardships

"In balancing the equities, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"  *U.S. Bank Nat'l Ass'n v. Friedrichs*, 924 F. Supp. 2d 1179, 1186 (S.D. Cal. 2013) (quoting *Winter*, 555 U.S. at 24)).  When balancing hardships in the context of foreclosure proceedings, courts often take into account not only the plaintiff's potential loss of a home, but also the defendant's rights under a mortgage or DOT.  *See, e.g.*, *Puruganan v. HSBC Bank USA, Nat'l Ass'n*, No. C 12-05168 SBA, 2012 WL 5503542, at *4 (N.D. Cal. Nov. 13, 2012) ("Plaintiffs' claims that Defendants improperly commenced the foreclosure process must be balanced against the fact that Plaintiffs have defaulted on their mortgage."); *Quach v. Bank of Am., Nat'l Ass'n*, No. 5:12-CV-05037 EJD, 2012 WL 4498873, at *4 (N.D. Cal. Sept. 28, 2012) ("[T]he court must be mindful that foreclosure proceedings have commenced against Plaintiff due to her failure to pay according to the terms of the Deed of Trust she executed.  For this reason, Plaintiff's complaint of irregularity must be viewed with an eye of inequity."); *Wilson v. Wells Fargo Bank*, No. C 11-03394 CRB, 2011 WL 3443635, at *3 (N.D. Cal. Aug. 5, 2011) ("Plaintiffs complain loudly of alleged improprieties on Defendants' part, but they ignore that it was their default

that put them in their current predicament.   Further, equity does not favor allowing Plaintiffs to avoid foreclosure having ceased making payments of any kind to anyone."); *Herrejon v. Ocwen Loan Servicing*, LLC, 980 F. Supp. 2d 1186, 1210 (E.D. Cal. 2013) ("[T]he balance of equities weighs in defendants' favor as the record suggests that plaintiffs may have unauthorized access to the property without payment of outstanding amounts owed and seek to delay foreclosure to extend their possession of the property."); *Haffeman v. Wells Fargo Bank, N.A.*, No. 12CV00046 BTM WVG, 2012 WL 827034, at *5 (S.D. Cal. Mar. 9, 2012) ("Defendant . . . has not collected mortgage payments on the Property for over a year and a half.  Thus, the balance of the equities does not tip sharply in favor of Plaintiffs.").

Here, the Court finds that the balance of hardships tips in Defendants' favor.  The foreclosure proceedings were initiated three years ago as a result of Plaintiff's default, and Plaintiff provides no evidence that she has made any contractually due payments over that period.  *See generally* TRO Appl.  Given such circumstances, granting an injunction at this stage of the foreclosure proceedings on the basis of Plaintiff's current allegations would impose inequitable costs and unjustified delay on Defendants.

### D.  Public Interest

Finally, Plaintiff claims there is a public interest in preventing Defendants from "unilaterally modifying loans to provide themselves rights and fees in the same or similar unlawful manner as Defendants have in this case solely to gorge funds from consumers nationwide."  TRO Appl. at 6.  Even if such an interest were cognizable, Plaintiff has provided no evidence to support her claims.  Moreover, "[w]ithout a likelihood of success on the merits and with the equities balanced against [Plaintiffs], issuing a preliminary injunction to stop the foreclosure goes against the public interest of affording relief to those deserving security on a defaulted loan."  *Wilson*, 2011 WL 3443635, at *3.  Finally, "[w]hen the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favor[s] in [granting or] denying the preliminary injunction."  *Great Am. Ins. Co.*

*v. JMR Constr. Corp.*, No. 215CV2226JCMNJK, 2015 WL 8328267, at *3 (D. Nev. Dec. 8, 2015) (citing *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1138–39 (9th Cir. 2009)) (internal quotation marks omitted) (alterations in original).  Therefore, the Court finds that, in the circumstances of this case, issuing a TRO would not be in the public interest.

**III.    Conclusion**

Plaintiff has failed to meet any of the four elements required for the Court to issue a TRO and has therefore failed to satisfy either of the tests necessary for the issuance of a TRO in the Ninth Circuit.   Accordingly, the Court **DENIES** Plaintiff's TRO Application.

**CONCLUSION**

In light of the foregoing, the Court **GRANTS** the Defendants' Requests for Judicial Notice (ECF Nos. 2-2 & 11-2) in their entirety, **GRANTS** Defendants' Motion to Dismiss (ECF No. 2) in its entirety, **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims, and **DENIES** Plaintiff's TRO Application (ECF No. 4).

Plaintiff **MAY FILE** an amended complaint within <u>thirty (30) days</u> of the date on which this Order is electronically docketed.  Should Plaintiff elect to file an amended complaint, it must cure the deficiencies noted herein and must be complete in itself without reference to Plaintiff's prior Complaint.  *See* S.D. Cal. CivLR 15.1.  Any claims not realleged in the amended complaint will be considered waived.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925, 928 (9th Cir. 2012).

**IT IS SO ORDERED.**

Dated:  October 5, 2022

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge